| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | CG7285 |
| RACHEL IZZO,<br><br>              Plaintiff,<br><br>     -against-<br><br>THE CITY OF NEW YORK, LT. ADAM LAMBOY, DET. LUCASZ SKORZEWSKI and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), Individually and in their Official Capacities.<br><br>             Defendants. | **FIRST AMENDED COMPLAINT**<br><br>**15-CV-7685 (RMB)** |

      Plaintiff RACHEL IZZO, by her attorneys MYERS SINGER & GALIARDO, LLP, complaining of the defendants for this AMENDED COMPLAINT, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, for the wrongful acts of Defendants THE CITY OF NEW YORK, LT. ADAM LAMBOY, DET. LUCASZ SKORZEWSKI and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), as Officers of the New York City Police Department, all acting under color of state law and pursuant to their authority, in violation of Plaintiff's civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

4. Venue is properly laid in this District under 28 U.S.C. §1391(b) and (c).

## TRIAL BY JURY

5. Plaintiffs demand a trial by jury on each and every one of their claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff is a Caucasian female and at all times relevant hereto was and is a resident of Brooklyn, New York.

7. At all times relevant hereto, defendant THE CITY OF NEW YORK (hereinafter, "CITY") is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department, which employs the other named Defendants.

8. At all times relevant to this action, LT. ADAM LAMBOY (hereinafter "LAMBOY"), DET. LUCASZ SKORZEWSKI (hereinafter "SKORZEWSKI") and P.O.s "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), are and were police officers employed by the New York City Police Department (hereinafter,

"NYPD"), and acting under color of state law. They are being sued in both their individual and official capacities.

9. At all times relevant hereto and in all their actions described herein, said Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the NYPD and CITY, pursuant to their authority as employees, servants and agents of the NYPD.

10. At all times relevant hereto and in all their actions described herein, said Defendants were acting within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers of the NYPD.

11. The CITY was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants, and/or employees of the NYPD.

## STATEMENT OF FACTS

12. On about January 6, 2013, Plaintiff, currently a 25 year-old nursing student, was the victim of a sexual assault at the hands of a social acquaintance in a Manhattan apartment.

13. Plaintiff did not immediately report the crime but instead left New York City to reside temporarily with her family in Seattle, Washington, while coming to terms with the emotional consequences of the assault.

14. In or about late June 2013, with the support of family and friends and a Victim's Advocate, Plaintiff reported the sexual assault to the NYPD by telephone. The matter was assigned to the Manhattan Special Victims division of the NYPD ("sex crimes").

15. Plaintiff was notified that officers from the Special Victims division would travel to Seattle to interview her with regard to the sexual assault.

3

16. On July 5, 2013, Defendants LAMBOY, as a lieutenant and supervising officer, and SKORZEWSKI, a detective, arrived in Seattle. The Defendants met with Plaintiff in the presence of her Victim's Advocate to conduct a lengthy interview regarding the sexual assault.

17. On July 6, 2013, Plaintiff had a follow-up meeting with SKORZEWSKI at a local diner to discuss additional details of the sexual assault investigation.

18. After the meeting, SKORZEWSKI asked Plaintiff to guide him to the Seattle waterfront area where LAMBOY was having lunch.

19. At approximately 2 p.m., Plaintiff and SKORZEWSKI met up with LAMBOY and a female NYPD colleague who, upon information and belief, was dating LAMBOY. Defendant LAMBOY was seated outside a restaurant, drinking whiskey.

20. After a brief greeting, Plaintiff indicated she was going to go home. However, LAMBOY told her to join them.

21. Given that the officers were investigating her case, Plaintiff expressed misgivings about joining the group in a social, rather than professional, setting. Defendant LAMBOY told her it would be "okay" and joked "we'll protect you".

22. When seated, the Defendants encouraged Plaintiff to order an alcoholic beverage. Plaintiff stated that she was not inclined to drink alcohol in the middle of the afternoon. Despite this, LAMBOY urged Plaintiff to order a drink and she complied.

23. Thereafter, the Defendant officers continued to consume alcohol while encouraging Plaintiff to do the same. The officers spoke openly about Plaintiff's "case" and then suggested the group continue to socialize at other local bars.

24. Over the course of the ensuing hours, the officers continued to buy alcoholic drinks for the Plaintiff during a "pub crawl" that lasted nearly 10 hours and included shots of whiskey.

25. As the Defendant officers continued to drink they became visibly intoxicated. At one point, the Defendant officers were "cut off" at a bar and refused further service for becoming too loud and intoxicated. Despite this, the officers drove Plaintiff onto another bar in downtown Seattle where they continued drinking.

26. Throughout the evening, the Defendant officers discussed the Plaintiff's sexual assault investigation, as well as the details of other, similar, investigations they had conducted.

27. An inebriated SKORZEWSKI began to flirt with Plaintiff, making inappropriate comments such as, "you're my favorite victim!" to which LAMBOY laughed.

28. By midnight, Plaintiff indicated she needed to leave because she had work in the morning. The officers told Plaintiff to call her boss and tell him she could not make it to work and that they would "vouch for her" as police officers.

29. In the early morning hours of July 7, 2013, Plaintiff again told the Defendants that she needed to go home. Instead of arranging her safe transport home, the officers coaxed Plaintiff to spend the night at their hotel.

30. That when they arrived at the hotel, LAMBOY, a supervising officer, told SKORZEWSKI to "take care" of Plaintiff and put her in the sole custody of SKORZEWSKI, while being fully aware of SKORZEWSKI's intoxicated condition.

31. That SKORZEWSKI then brought Plaintiff to his room, putting her to bed while he slept on a couch.

32. The following morning, at approximately 10:00 am, SKORZEWSKI climbed into the bed with Plaintiff and began to touch the Plaintiff in an inappropriate manner.

33. That SKORZEWSKI moved closer and told Plaintiff he wanted to kiss her. Plaintiff told the officer it was not appropriate.

34. Nevertheless, SKORZEWSKI began kissing and fondling and/or inappropriately touching the Plaintiff.

35. For the next 20-30 minutes, SKORZEWSKI persistently kissed and fondled the Plaintiff while repeatedly attempting to place his hands under her pants. Plaintiff pushed his hands away.

36. Eventually, Plaintiff got out of bed and retreated to the shower where she began to cry.

37. When Plaintiff returned to the room, she was confronted by SKORZEWSKI who implored Plaintiff not to divulge what had just transpired to anyone. "It can't leave this room", stated SKORZEWSKI.

38. On or about July 8, 2013, the defendants departed for New York. Prior to leaving, defendants told the Plaintiff that they would investigate her case but that she should not mention the events of their night out to anyone. LAMBOY directly warned Plaintiff that her "credibility would be shot" if people found out.

39. The Plaintiff was fearful that the underlying sexual assault investigation would be jeopardized if she did not remain silent as to the events which took place with the investigating officers.

40. Over the ensuing two months, SKORZEWSKI persistently contacted Plaintiff by phone and text message during working hours to ostensibly discuss the investigation but

6

instead spoke to her about unrelated matters. He sent the Plaintiff 100s of text messages and spoke to her at length nearly every day by telephone. He told the Plaintiff that he had "never bonded with a victim like this before".

41. Upon information and belief, SKORZEWSKI befriended Plaintiff in a self-serving effort to ensure she would be less likely to report his misconduct.

42. At the same time, it became clear that SKORZEWSKI was conducting little if any investigation into the underlying assault.

43. In late August 2013, Plaintiff had a telephone conversation with SKORZEWSKI in which the Detective blamed her for causing so much discord in his life and indicated that "if his wife found out" he had been calling Plaintiff so often "it would be over".

44. In or about October 2013, the Plaintiff travelled to New York City and met with the defendants to conduct an unsuccessful "controlled call" in which she spoke to the sexual assailant to see whether he would incriminate himself.

45. In or about November 2013, the underlying sexual assault investigation was closed without any explanation to the Plaintiff. Upon information and belief, the defendant officers never directly spoke to and/or interviewed the assailant.

46. In or about January 2014, the Plaintiff moved back to New York City to complete her nursing degree.

47. In or about April 2014, the Internal Affairs Bureau ("IAB") commenced an investigation into the conduct of the Defendant officers.

48. In December 2014, IAB issued findings that "partially substantiated" charges of misconduct against the Defendant officers. Disciplinary charges were then brought against the Defendants officers by the NYPD.

49. Upon information and belief, Defendant LAMBOY pled guilty to departmental charges of "prohibited conduct" by virtue of taking a crime victim out for drinks and failing to properly supervise his subordinate officer. He was docked pay and was transferred to a different unit, then subsequently retired.

50. Upon information and belief, Defendant SKORZEWSKI also pled guilty to departmental charges and was, *inter alia*, suspended, demoted in rank and removed from the Special Victims division of the NYPD.

51. That the foregoing actions of the Defendants represent a gross and repugnant dereliction of their duties and a severe abuse of their position and power as police officers charged with the obligation to serve and protect the public.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF: DEPRIVATION OF FEDERAL CIVIL RIGHTS

52. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 51 with the same force and effect as if fully set forth herein.

53. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

54. All of the aforementioned acts deprived Plaintiff RACHEL IZZO of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

55. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

56. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of the CITY and the NYPD, all under the supervision of ranking officers of said department.

57. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

58. By these actions, these Defendants have deprived Plaintiff of rights secured, *inter alia*, by the First, Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

### SECOND CLAIM FOR RELIEF: CONSPIRACY TO VIOLATE CIVIL RIGHTS

59. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 58 with the same force and effect as if fully set forth herein.

60. All of the aforementioned Defendants conspired to violate Plaintiff's civil rights by agreeing among themselves to commit the acts, as described above, in violation of 42 U.S.C. § 1985, for which the Defendants are individually liable.

## THIRD CLAIM FOR RELIEF:
## SEXUAL MISCONDUCT IN VIOLATION 4th AND 14th AMENDMENTS

61. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 60 with the same force and effect as if fully set forth herein.

62. That in the course of their investigation of a sexual assault, the Defendant officers did engage in police sexual misconduct toward the Plaintiff while acting under the color of state law, and that such actions by the Defendants served no legitimate law enforcement purpose but were only done to harass, demean, annoy, subjugate, prey upon and instill fear in the Plaintiff.

63. That the aforementioned acts of police sexual misconduct, including, *inter alia*, sexual flirting, kissing and fondling, perpetuated by the Defendants were done while "on duty" in the course of their employment while they carried out their official job responsibilities and/or investigation; and, in fact, that the Defendants made use of their official police authority to enable access and opportunity to commit the sexual misconduct against Plaintiff.

64. That Plaintiff, as a complaining witness and a victim of a prior sexual assault, put her trust in the Defendant officers and did not have the capacity to consent to their actions.

65. That the aforementioned acts of sexual misconduct perpetuated by the Defendants constitute a gross breach and abuse of their official police authority.

66. Further, no reasonable officer could have believed that the aforementioned conduct of the Defendants did not violate the constitutional rights of the Plaintiff as guaranteed by, *inter alia*, the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF:
## INVASION OF PRIVACY UNDER 4th AND 14th AMENDMENTS

67. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 66 with the same force and effect as if fully set forth herein.

68. By the actions described above, defendants engaged in extreme and outrageous conduct, conduct which abused the public trust and is intolerable in a civilized community, and conduct which invaded the Plaintiff's right to privacy in her person.

69. That the right to privacy is a liberty which the Plaintiff was deprived of by the aforementioned acts of the Defendants without due process of the law in violation of the Plaintiff's rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

70. As a result of the foregoing, the Plaintiff was experienced pain and suffering, psychological and emotional injury, great humiliation and was otherwise damaged and injured.

## FIFTH CLAIM FOR RELIEF:
## VIOLATION OF FREE SPEECH

71. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 71 with the same force and effect as if fully set forth herein.

72. By the actions described above, Defendants violated the rights of Plaintiff to free speech under the law and intimidated her from speaking out or reporting their misconduct.

73. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitutions of the United States and the State of New York.

74. As a result of the foregoing, the Plaintiff experienced pain and suffering, psychological and emotional injury, great humiliation and was otherwise damaged and injured.

### SIXTH CLAIM FOR RELIEF:
### MUNICIPAL LIABILITY- LAMBOY AS A POLICY MAKER VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

75. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 74 with the same force and effect as if fully set forth herein.

76. Defendant LAMBOY, as a Lieutenant and a supervising officer, established the protocols and policies followed by the Defendant officers during the subject out-of-state investigation in Seattle, Washington.

77. Defendant LAMBOY, as a Lieutenant and a supervising officer during an out-of-state investigation, was given the latitude to make discretionary decisions which were not constrained by official policies and were not subject to review. As such, he acted as a de facto final policy maker at all times during the Defendant officers' subject investigation.

78. Defendant LAMBOY arranged and/or allowed the interviewing of Plaintiff, the complaining witness in a sex crime, in a social rather than professional setting and failed to abide by proper protocols which would have otherwise governed the conduct of the officers in a sex crime investigation in New York State.

79. Defendant LAMBOY failed to notify local law enforcement authorities that he would be conducting an investigation and interview of a Seattle resident, the Plaintiff, and otherwise failed to follow local law enforcement protocols.

80. Defendant LAMBOY made the decision to continue to interview and interact with the Plaintiff in a social setting wherein alcohol was being served and consumed.

81. Defendant LAMBOY, while continuing to interact with Plaintiff and inquire about her case, actively encouraged Plaintiff to consume alcohol during the course of the evening, encouraged to Plaintiff to stay out late and "call in sick" to work and, finally, coaxed Plaintiff to return to the officers' hotel.

82. Defendant LAMBOY knew that during the evening, Defendant SKORZEWSKI had become grossly intoxicated and acted in an inappropriate manner toward the Plaintiff; nevertheless he made the decision to place Plaintiff in the sole custody of Defendant SKORZEWSKI late at night in a private hotel room, which was not only grossly inappropriate but a foreseeable risk to the Plaintiff.

83. As such, Defendant LAMBOY was on notice of the foreseeable actions of Defendant SKORZEWSKI toward the Plaintiff and failed to stop or prevent the circumstance or safeguard the Plaintiff; worse, yet, he was not only complicit in such conduct but made decisions which encouraged it and, in so doing, placed Plaintiff at significant risk.

84. Based upon the foregoing, Defendant LAMBOY patently exhibited a deliberate indifference toward the health, safety, welfare and constitutional rights of the Plaintiff.

85. As a result of the deliberate indifference of Defendant LAMBOY, Plaintiff was subjugated, preyed upon and subjected to the kissing, fondling and/or inappropriate touching of Defendant SKORZEWSKI in violation of her constitutional rights.

86. Further, Defendant LAMBOY warned Plaintiff not to disclose the events of the evening or her case would be severely compromised, impairing her freedom of speech.

87. The foregoing unlawful conduct caused Plaintiff RACHEL IZZO to suffer severe emotional distress, humiliation, shame, physical and emotional abuse, and deprivation of her constitutional rights.

## SEVENTH CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY- FAILURE TO TRAIN AND SUPERVISE AS DELIBERATE INDIFFERENCE

88. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 87 with the same force and effect as if fully set forth herein.

89. Plaintiff RACHEL IZZO came forward to the Defendants as a "complaining witness" to report that she had been the victim of a sex crime.

90. Defendants LAMBOY and SKORZEWSKI were assigned to investigate the sexual assault against the Plaintiff. That Plaintiff, as a victim, deserved the protection, safeguarding and decency of the investigating officers.

91. Instead, the Defendant police officers behaved in a grossly inappropriate and victimizing manner toward the plaintiff and subjected her to a violation of her civil rights.

92. The CITY knew with a moral certainty that their police officers, particularly those assigned within a sex crime unit, will need to interact with complaining witnesses and the victims of sex crimes.

93. The CITY knew with a moral certainty that those complaining witnesses and victims of sex crimes will be in a vulnerable and emotional state as a consequence of the crimes perpetuated against them and that the officers interacting with said victims would face difficult choices in the handling of these delicate situations of a sort that proper training or supervision would make less difficult.

94. The CITY knew with a moral certainty that untrained or improperly trained officers who mishandled the delicate interactions with complaining witnesses and the victims of sex crimes will frequently cause the deprivations of that citizen's constitutional rights.

95. Nevertheless, the CITY was deliberately indifferent to the needs of those victims and failed to properly train and/or supervise the officers who were placed in a position of authority and trust for victims seeking solace and security.

96. The CITY consciously disregarded the known risk of harm to Plaintiff RACHEL IZZO that was posed and/or created by the failure to train and supervise Defendants LAMBOY and SKORZEWSKI.

97. The CITY exhibited a deliberate indifference to the health, safety and welfare of the Plaintiff RACHEL IZZO.

98. It was clear and foreseeable to the CITY that this failure to properly train officers, or to establish proper policies and/or procedures governing their conduct, would frequently cause the deprivation of a citizen's rights, particularly the victims of sex crimes, and thus, the failure to properly train demonstrates a deliberate indifference to the needs of those citizens, such as the Plaintiff.

99. Furthermore, the consistent failure of the CITY to properly discipline its officers for acts of misconduct in the conduct of their duties and investigations has created a culture in which the officers feel emboldened to act as they choose without fear of repercussions or discipline; such failure to discipline by the CITY demonstrates a deliberate indifference to the rights of the citizenry at large, including those of the Plaintiff.

100. Furthermore, the consistent failure of the CITY to properly discipline its officers for acts of misconduct has created a culture in which the officers feel emboldened act in contravention of CITY policies, customs and procedures otherwise governing their conduct; such failure to discipline by the CITY demonstrates a deliberate indifference to the rights of the citizenry at large, including those of the Plaintiff.

101.  Specifically, the CITY, including the NYPD, are liable for, *inter alia*, the following unconstitutional practices, policies and procedures:

   a.  Failing to establish proper policies or protocols governing the conduct of the police officers in the sex crime unit, specifically as they relate to the interviewing of, and interacting with, sex crime victims;

   b.  Failing to properly train police officers in the sex crime unit as to the protocols in conducting criminal investigations;

   c.  Failing to properly train officers in the sex crime unit as to how to treat and interact with complaining witnesses;

   d.  Failing to properly train officers as to the sensitive and vulnerable nature of complaining witnesses, particularly those who were victims of sex crimes, so as not act or behave in manners which may abuse their trust;

   e.  Failing to properly train officers not to socially engage with complaining witnesses and/or purchase them alcohol, particularly those who were victims of sex crimes;

   f.  Failing to properly train officers not to attempt to establish a social, romantic or sexual relationship with a complaining witness, particularly those who were victims of sex crimes;

   g.  Failing to establish a proper "code of ethics" for police officers which specifically addresses matters of police sexual misconduct involving the public;

   h.  Failing to incorporate a "code of ethics" into the formal training of police officers which specifically addresses matters of police sexual misconduct involving the public, particularly those officers in a sex crime unit;

   i.  Failing to properly investigate police officers who engage in inappropriate behavior and/or sexual misconduct against the public and/or complaining witnesses;

   j.  Failing to properly discipline and/or prosecute police officers who engage in inappropriate behavior and/or sexual misconduct against the public and/or complaining witnesses, which in effect condones their misconduct and emboldens officers to engage in such egregious behavior;

k. Failing to properly train and supervise police officers regarding their affirmative duty to report misconduct by other employees and/or officers toward the public, including but not limited to, the sexual misconduct against a complaining witness;

l. Failing to properly discipline or prosecute police officers who fail to report the unlawful or inappropriate conduct of fellow employees and/or officers toward a complaining witness;

m. Failing to develop and implement adequate safeguards to prevent the sexual misconduct of police officers against complaining witnesses and/or crime victims, despite a long-standing, pervasive and documented history of such sexual misconduct;

n. Permitting and paying for sex crimes officers to travel to foreign jurisdictions to conduct sex crimes investigations while failing to establish protocols for those investigations, including the interviewing and interaction with complaining witnesses;

o. Permitting and paying for sex crimes officers to travel to foreign jurisdictions to interview and meet with complaining witnesses while failing to establish a safe, professional environment for the conducting of such meetings;

p. Permitting and paying for sex crimes officers to conduct independent investigations in foreign jurisdictions without advising local law enforcement authorities of their presence;

q. Permitting and paying for sex crimes officers to conduct independent investigations in foreign jurisdictions without following local enforcement protocols for the conducting of such investigations;

r. Permitting sex crimes officers to interview the victims of a sex crime in a foreign jurisdiction without a female officer and/or representative present;

s. Permitting sex crimes officers to interview out-of-state sex crime witnesses in social, rather than professional, settings;

t. Failing to establish and/or enforce proper policies or procedures which govern the interviewing of out-of-state sex crime witnesses;

u. Failing to establish, train and/or enforce proper policies or procedures which mandate the interviewing of out-of-state sex crime witnesses in a professional setting, with a female representative present, during normal business hours.

102. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of persons with whom the police come in contact, including Plaintiff.

103. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

104. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD were the moving force behind the constitutional violation suffered by Plaintiff as alleged herein.

105. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

106. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

107. The acts complained of herein were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

108. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of said department.

109. Defendant CITY, as municipal policymaker in the training and supervision of Defendant police officers, has pursued a policy and custom of deliberate indifference to

the rights of persons in their domain who suffer violation of their rights due to the behavior and conduct of individual police officers acting under the color of state law, with apparent authority, while effecting no legitimate law enforcement purpose, and, further, engaging in conduct which no reasonable police officer could believe did not violate the civil rights of the Plaintiff or other such individuals.

110.   All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a. To be free from police sexual misconduct;

    b. To be free from seizure or intrusion upon her person;

    c. To enjoy the right to privacy; and

    d. To enjoy the right to free speech.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff RACHEL IZZO demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS.

2. Punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court seems just and proper.

DATED:   New York, New York
         February 16, 2016

                                               Respectfully submitted,

                                               Christopher D. Galiardo (CG7285)

                                               MYERS SINGER & GALIARDO, LLP
                                               *Attorneys for Plaintiff*
                                               299 Broadway, Suite 200
                                               New York, New York 10168
                                               (212) 986-5900